KOGAN, Chief Judge.
Under the provisions of article Y, section 9 of the Florida Constitution, the Supreme Court of Florida is responsible for determining the need for additional judges, or the necessity for decreasing the number of judges required to consider cases filed before the respective courts. We appreciate the fiscal ramifications of certifying new judges, and have adopted a policy of only doing so when we are certain that such a need exists. To this end, we have analyzed case filings and evaluated the growth in judicial workload over the past several years.
As a result of this careful review, in which we considered requests for a total of 26 new judges, we have determined we should certify the need for seven additional circuit judges, three additional county judges, and no additional appellate judges for a total of 10 new judicial positions. A comparison of the requests for new judges filed by the respective courts and the new judges certified as needed for fiscal year 1997-98 follows: [1]
[[Image here]]
*323 [[Image here]]
[[Image here]]
This conservative certification is dependent upon receipt of the requested increase in funding for the assignment of senior judges. As explained herein, using senior judges is a very cost efficient means of meeting the increasing judicial workload.
⅜ ⅝ ⅜ ⅜ ⅜ ⅜
The criteria for certification of the need for additional judges in the district courts of appeal are set forth in rule 2.035(b)(2), Florida Rules of Judicial Administration. The Court received a request for three additional judges from the First District Court of Appeal. None of the other district courts requested additional judges. The last new judgeships for the district courts were authorized in 1993. Since that time the number of annual filings in each district court has risen steadily. It is forecast that a total of 22,885 cases will be filed in the district courts in 1997, a 24 percent increase since 1993. Judicial workload is expected to range from 337 filings per judge in the Third District Court of Appeal to 411 filings per judge in the Fifth District Court of Appeal.
The district courts have each addressed increased workload pressures through various means. They have improved internal operating procedures, established central legal research staffs to handle selected matters, and assigned senior judges to hear appeals on a temporary basis. The First District Court of Appeal has developed an appellate pre-briefing conference program combining both mediation and ease management, as well as a specialized division to handle administrative and workers’ compensation cases. We continue to encourage these courts to develop alternative and creative means to efficiently and fairly hear the eases brought before them. Such efforts have enabled the courts to address increases in caseloads without the serial addition of new appellate judges.
Nevertheless, we find that the continued growth in filings will soon force consideration of significant increases of judicial and other resources of the district courts. As an alternative to certifying new judges though, we recommend that consideration be given to changing the organization, jurisdiction, or geographical boundaries of the districts. The creation of additional districts may also be a plausible alternative.
To ensure a thorough review of these potential alternatives, the Court has directed the Judicial Management Council (JMC) to conduct an in-depth study of workload issues and all related policy for the district courts of appeal. The JMC Committee on Appellate Court Workload and Jurisdiction has already begun work in this regard. The Committee is examining the organization, jurisdiction, nature and flow of work, internal operating procedures, need for judges, judicial and support staffing standards, and alternatives to adding more judges. The alternatives being considered include redrawing the boundaries of the current districts and creating new districts. We have asked the Judicial Management Council to complete its study by May 30,1997.
For the foregoing reasons we are not certifying the need for any of the judgeships requested by the First District Court of Appeal. The results of the Judicial Management Council study will be considered by the Court in preparation for the 1998 certification opinion.
*324 The criteria for certification of the need for judges in trial courts are set forth in rule 2.035(b)(1), Florida Rules of Judicial Administration. Consistent with previous practice, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable measure of workload at the trial court level is total case filings per judge.
In addition to filings data, we considered the other factors described in rule 2.035(b)(1)(B), Florida Rules of Judicial Administration. These factors included county judge service on the circuit bench, the availability and use of senior judges, the availability and use of supplemental hearing officers, the use of alternative dispute resolution, the number of jury trials, the number of foreign language interpretations, the geographic size of a circuit, special law enforcement activities, the availability and use of case-related support staff and case management policies and practices, the nature and complexity of cases, and caseload trends. This information was extremely useful in evaluating the requests of the various circuit courts.
After reviewing these factors, we find it necessary to certify the need for seven new circuit judges for fiscal year 1997-98, as follows: one additional circuit judge each for the Second, Fourth, Seventh, Ninth, and Seventeenth Judicial Circuits, and two for the Fifth Judicial Circuit.
The overall workload of Florida’s circuit courts continues to grow at a steady but modest rate. From 1995 through 1997, total filings are projected to increase five percent. Moreover, criminal filings are projected to grow by 12 percent over the same period. Civil filings, which were relatively flat through 1994, are increasing and are projected to grow by 10 percent through 1997. Domestic relations matters, which had been a growth category through 1994, have leveled off somewhat, but domestic and repeat violence filings continue to increase dramatically. These cases have increased 35 percent over the past four years.
Not only are circuit court filings increasing but, as we pointed out in previous certification opinions, all categories of cases being filed are more labor intensive than in previous years. In the past, circuit courts projected to have 1,865 filings per judge were considered working above capacity. This Court presumed that the circuit courts working at this threshold level required additional judicial resources. Today, there are other factors this Court must consider in evaluating workload. Changes in the statutes, case law and court procedure in recent years have necessitated more hearings for various types of cases, mandated priority handling for certain matters, and required judges to render written findings of fact and conclusions of law more frequently. The collective effect of these changes is that cases are more involved and labor intensive than when the 1,865 filings per judge threshold was adopted in 1986. Often these changes cannot be measured in terms of a need for full-time judicial positions in a particular jurisdiction, but instead serve to gradually increase workload across the board.
Due to the increase in labor intensity, we are compelled to give careful consideration to the necessity for additional judgeships not only for courts near or above the threshold, but also for courts that are somewhat below the standard as well. Four of the six courts for which we are currently certifying a need for an additional judge or judges are forecast to exceed the 1,865 filing per judge threshold in 1997. We also certify the need for one additional judge each for the Fourth and Seventeenth Judicial Circuits which are expected to have 1997 workloads slightly below the threshold.
Although we recognize that these circuits are faced with mounting workload pressures, we elect to limit the number of new judges certified to each and supplement the judicial resources in those circuits with senior judges. The Court has long encouraged the trial courts to consider alternatives to adding additional judgeships whenever possible. In *325 addition to the effective and cost efficient use of senior judges, trial courts have employed an array of resources and case management strategies including: the establishment of specialized subject matter or trial divisions; differentiated case management to consolidate and expedite certain types of cases; the use of general or special masters, child support hearing officers, and traffic magistrates; court annexed mediation or arbitration of family, civil and selected juvenile matters; and the assignment of a cadre of trial court law clerks to assist with case reviews, case management and legal research. We encourage the continued use of these alternatives.
As in the circuit courts, caseloads in Florida’s county courts continue to increase at a steady rate, following a four year downward trend from 1990 through 1993. This increase is largely attributable to growth in criminal filings. We considered this increase in evaluating the need for additional county judges. We relied principally on case filings data that were adjusted to include only criminal, civil, DUI, and other criminal traffic cases. As in the past, worthless check cases and civil traffic infractions were weighted less heavily because of their volume and the lessened requirement for judicial attention per case, the diversion of large numbers of worthless check cases in selected circuits, and the variability and volume of such cases reported from county to county.
County courts with caseload forecasts near or exceeding 6,114 filings per judge are presumed to be operating at or above capacity. All of the counties for which we certify the need for an additional judge are projected to exceed the 6,114 threshold in 1997. We find it necessary to certify the need for three new county judges for fiscal year 1997-98, one each for Broward, Dade and Orange Counties.
Again, it is clear to this Court that adding judges alone will not ensure increased efficiency in the Florida State Courts System. Neither is it the most cost effective means for addressing increased caseloads. This conclusion is supported by our evaluation of judicial workload in the twenty judicial circuits. We will continue to rely heavily on the use of senior judges on temporary assignment to augment the active trial and appellate court judiciary. Senior judges will serve in excess of 5,600 days in the current fiscal year. The cost of the equivalent of a year of senior judge service is approximately 30 percent of the annual cost of a circuit judgeship. We are requesting an increase in funding for approximately 1,400 additional senior judge days for fiscal year 1997-98.
Further, judges cannot efficiently and effectively manage caseloads without the benefit of adequate numbers of trained support staff. The availability of law clerks, case managers, office automation, and other resources are essential to the ability of Florida’s courts to effectively address caseload pressures on a continuing basis. We urge the Florida Legislature to fund the judicial branch budget requests for such resources.
Full funding of the requests certified in this opinion is absolutely essential if Florida’s courts are to fulfill their constitutional mandate to try eases in a fair, impartial, and timely manner. Therefore, this Court encourages the Florida Legislature to authorize the judgeships certified herein, effective October 1,1997.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.

. Circuit and county courts that did not request additional judges are not included in the applicable chart.